# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 09-297 (RHK/JJK) |
| Plaintiff, | |
| v. | |
| Sherman Antonio Nelson, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

David P. Steinkamp, Esq., Assistant United States Attorney, counsel for Plaintiff.

Caroline Durham, Esq., Assistant Federal Defender, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Sherman Antonio Nelson's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20). Defendant challenges the validity of his arrest, and the validity of the stop and search of his person and the vehicle from which he was removed. Specifically, Defendant seeks to suppress from evidence at trial any physical evidence obtained as a result of the stop, search, and seizure that took place on September 15, 2009, on the grounds that law enforcement officers lacked sufficient reasonable, articulable suspicion of criminal activity to conduct an investigatory stop of the parked vehicle in which he was a passenger. This Court

held a hearing on the motions on March 22, 2010,[1] and received testimony from the following two witnesses: City of St. Paul Police Officer Darryl Robert Boerger and Federal Investigator Timothy Wayne Trebil. This Court also received two exhibits from defense counsel. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

On September 15, 2009, at approximately 6:00 p.m., Officer Darryl Boerger was on duty with his partner Officer Tim Moore, patrolling an area known as "Frogtown," in St. Paul, Minnesota, looking for suspicious activity. At the time, Officer Boerger was wearing a pullover shirt that said "police" in yellow on the front and back, and had patches on the sides that indicated he was the police. He was also wearing blue cargo pants. He and Officer Moore were driving an unmarked, navy blue Ford Taurus that had a light on the dash. Officer Boerger testified that at the time it was daylight, with no particular weather conditions.

---

[1] On March 22, 2010, this Court issued an Order requiring post-hearing briefing by both parties on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20), to be filed no later than March 25, 2010. This Court would then take the motion under advisement on March 25, 2010, for submission to the District Court on Report and Recommendation. (Doc. No. 44). Defendant filed his brief in a timely fashion, but the Government did not. The Government filed its submission one day late. Nevertheless, this Court considers the Government's submission when making its recommendation to the District Court, but warns the Government that not complying with this Court's deadlines in the future may result in this Court disregarding its untimely submission.

While patrolling the neighborhood, Officer Boerger noticed someone sitting in the driver's seat of a maroon minivan (later identified as a 1996 GMC Safari minivan), located near 689 Fuller Avenue facing westbound. The minivan was running at the time. Officer Boerger testified at the suppression hearing that in his training and experience someone sitting alone in a vehicle in this neighborhood, where the police had received calls regarding street-level narcotics activity, could indicate a possible narcotics transaction. Officer Boerger ran the license plates for the maroon minivan and learned that it was registered to someone in Eagan, Minnesota. He then drove his vehicle further west on Fuller Avenue, made a U-turn at Grotto Street, and then after facing the maroon minivan and being approximately 75 yards away, pulled over to the side of the road and continued to watch the maroon minivan. With the use of binoculars, Officer Boerger was able to view a person lounging in the driver's seat of the minivan; the minivan had a normal, non-tinted windshield. The person occasionally looked over his right shoulder. After approximately two minutes, Officer Boerger viewed someone approaching the minivan on foot at a decent pace, coming from some unknown location. At the suppression hearing, Officer Boerger identified this person as Defendant. He testified that Defendant approached the maroon minivan on the sidewalk in a wandering fashion, continuously turning and looking around, like his "head was on a swivel." Defendant opened the front passenger-side door of the minivan and climbed inside. Officer Boerger observed what appeared to be the two occupants of the

minivan communicating and making physical gestures toward one another. He stated that he could see their faces, but he was not able to see their hands at this point. Officer Boerger also stated that he observed that both of them continued to "swivel" their heads about, continuously looking behind them and in the vehicle's mirrors. At times, he also saw them looking down at something. Officer Boerger testified that such observations are familiar to him and consistent with drug-trafficking activity.

After observing for approximately three minutes, the two officers discussed with one another what their next move would be. The officers decided to drive toward the van slowly (less than 30 m.p.h.), and casually, so that they would not "tip off" the occupants of the maroon minivan. Once the officers' vehicle's front bumper was parallel with the front bumper of the maroon minivan, the officers parked the vehicle in the middle of the road, activated the light on the dash, jumped out of the vehicle, and immediately announced that they were St. Paul police. As Officer Boerger approached the driver's side of the maroon minivan, he observed Defendant with a panicked look on his face, reach forward to try to pull the driver's column gear shifter, and yell "Go, go, go!" At this point, Officer Boerger removed his gun from his holster, pointed it at the driver of the minivan, and ordered both occupants to show their hands. Officer Boerger testified that he proceeded this way because he feared that the driver may run him over, and he feared that one or both of the occupants might have a weapon. When Officer Boerger ordered the occupants to show their hands, the person in the driver's

4

seat showed his hands, but Defendant put his hands down at his sides as if to conceal them. Officer Boerger also observed that Defendant had a package in his left hand with an off-white substance in it. He saw Defendant transfer the package to his right hand, fall back in his seat, and then whip the package down toward the passenger-side door. Officer Boerger testified that based on packaging he had seen before, he suspected that there was crack cocaine in the package that Defendant had thrown.

While Officer Moore escorted the person seated in the driver's seat of the minivan out of the vehicle, Officer Boerger moved around the minivan to the passenger-side door. Defendant then showed his hands. Officer Boerger holstered his gun, opened the unlocked door, and escorted Defendant out of the vehicle. Officer Boerger told Defendant that he was under arrest, and handcuffed him behind his back. Officer Boerger then recovered the package that Defendant had thrown down near the passenger-side door, which later tested positive for 62 grams of crack cocaine. Officer Boerger also searched Defendant's person. In Defendant's left front pants pocket, Officer Boerger recovered a 3 x 5 in. electronic scale and $460 cash. In Defendant's right front pants pocket, Officer Boerger found two small rocks, which later tested positive for six grams of crack cocaine. At that point, the officers secured the items recovered and called for transport.

The person sitting in the driver's seat of the maroon minivan was searched (finding $1200 cash on his person), cited for driving after revocation,[2] and allowed to walk away from the scene. The officers did not seize the $1200 from this person. Defendant was subsequently indicted for Possession with Intent to Distribute in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), and Title 18, United States Code, Section 2, and Conspiracy to Distribute and Possess with Intent to Distribute in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846.

---

[2] Federal Defender's Office Investigator Trebil testified that he was unable to locate a record of the driving-after-revocation ticket through an on-line state driving record database, which Defendant asserts implies that Officer Boerger may not be telling the truth. But Investigator Trebil admitted that it is possible that there was a ticket written but not entered into the database. And in the Government's post-hearing submissions, the Government attaches a copy of the citation that was issued, and offers a reasonable explanation of why the citation would not yet be in the database – there has not been a final adjudication of the matter because the fine has not been paid.

Defendant also asserts that the Court should question Officer Boerger's credibility for another reason. Officer Boerger testified that he interviewed Defendant after he provided Defendant with his *Miranda* rights, and that he recorded this conversation. Officer Boerger stated, however, that a tape of this conversation does not exist because he did not save it to the media drive since the length of the conversation was so short. Defendant contends that because Officer Boerger did not save the recording, he "acts without regard to the law." (Doc. No. 46, Def.'s Mem. in Supp. of Mot. to Suppress 6.) But Defendant presents nothing that supports that Officer Boerger was required to retain the recording under those circumstances. Moreover, this Court finds Officer Boerger's testimony regarding his observations prior to the investigatory stop to be credible.

## DISCUSSION

Defendant asserts that the police illegally stopped the maroon minivan in which he was a passenger on September 15, 2009, and conducted an illegal search and seizure. Specifically, Defendant alleges that the officers made the stop without an objective and particularized justification, nor did they have reasonable, articulable suspicion of criminal activity. Defendant moves to suppress the evidence obtained as a result of the search and seizure.

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *United States v. Roby*, 122 F.3d 1120, 1123 (8th Cir. 1997). A roadside traffic stop "is well established" as a "'seizure' within the meaning of the Fourth Amendment." *United States v. Jones,* 269 F.3d 919, 924 (8th Cir. 2001) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)); *see also United States v. Martinez-Fuerte,* 428 U.S. 543, 556-58 (1976); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975). In addition, a passenger in a motor vehicle has the same standing as the driver to challenge the legality of the stop. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007).

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 30 (1968); *see also United States v. Bell,* 480 F.3d 860, 863 (8th Cir. 2007). The police officer must have "a particularized and objective basis" for suspecting criminal activity. *Bell*, 480 F.3d at 863 (quoting *United*

*States v. Jacobsen,* 391 F.3d 904, 906 (8th Cir. 2004)). Such suspicion may not be based on an inchoate or unparticularized suspicion or hunch, but must be grounded on facts which, in light of the officer's experience, support specific, reasonable inferences that justify the intrusion. *Terry,* 392 U.S. at 22. "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *Bell*, 480 F.3d at 863 (quoting *United States v. Maltais,* 403 F.3d 550, 554 (8th Cir. 2005)). When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel his or her suspicions. *United States v. Johnson*, 64 F.3d 1120, 1124 (8th Cir. 1995).

Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003) (quotations omitted). Therefore, a stop may be justified even where no traffic violation has occurred. *United States v. Mora-Higuera*, 269 F.3d 905, 909 (8th Cir. 2001). And even innocent actions may give rise to reasonable suspicion if they warrant consideration under the totality of the circumstances. *See United States v. Condelee*, 915 F.2d 1206, 1209 (8th Cir. 1990) (stating that "there could be 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot'") (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)). If an investigatory stop is

8

not justified by reasonable suspicion, any evidence derived from the stop is inadmissible at trial. See Wheat, 278 F.3d at 726 (citing Wong Sun v. United States, 371 U.S. 471, 484 (1963)).

Here, the officers spotted a parked, but running, maroon minivan registered to someone in Eagan, with someone sitting in the driver's seat, in an area of St. Paul where the police had received calls regarding street-level narcotics activity. According to Officer Boerger, in his training and experience (which included involvement in approximately 300 drug investigations), someone sitting alone in a vehicle in this neighborhood could indicate a possible narcotics transaction, and he found that a vehicle registered to an owner in Eagan located in this area of St. Paul to be suspicious. Officer Boerger watched the person in the minivan for approximately two minutes and saw the person occasionally look over his right shoulder. Officer Boerger then viewed Defendant approach the minivan on foot at a decent pace, in a wandering fashion, continuously turning and looking around. After Defendant climbed inside the minivan's front passenger compartment, Officer Boerger saw the two occupants apparently talking to each other, however, all the while, the two occupants continued to look behind them and in the vehicle's mirrors. He also saw them occasionally looking down at something. Officer Boerger testified that such observations are familiar to him and consistent with drug-trafficking activities. Although each of these facts as explained by Officer Boerger is susceptible of innocent, non-criminal behavior, taken together, and giving some deference to Officer Boerger's training and

experience, the Court concludes that they were sufficient to form a particularized and objective basis for Officer Boerger to suspect that the people inside the maroon minivan were involved in drug-trafficking activities.

If the officers had not stopped the maroon minivan and its occupants, the police would have lost the chance to conduct the investigation.  This Court is required to give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances."  *United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997) (citations omitted).  Considering the totality of the circumstances that were known to Officer Boerger just prior to the traffic stop, and particularly the shifty conduct displayed by the two occupants of the maroon minivan, this Court finds that there was reasonable suspicion to support the investigative stop.  *See United States v. Ilazi*, 563 F. Supp. 730, 735-36 (D. Minn. 1983) (holding that the initial stop was supported by reasonable suspicion of drug trafficking when one fact known to the agents, among others, was that "defendant repeatedly scanned the area as if to see if anyone was looking at him").

Further, when Officer Boerger was attempting to make the stop, he saw Defendant with a panicked look on his face, reach forward to try to pull the driver's gear shifter, and yell "Go, go, go!"  And when he ordered both occupants to show their hands he saw Defendant first put his hands down at his sides as if to conceal them, and then saw Defendant transfer a package with an off-white substance in it from Defendant's left hand to his right hand, and then onto the

floor. These actions confirmed Officer Boerger's suspicions that there was likely a drug-related crime being committed, and he had probable cause to arrest Defendant at that point. *See United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) ("[P]robable cause exists when the totality of the circumstances justifies the belief that a crime has been committed and the person being seized committed it."); *see also* Minn. Stat. § 609.487, subd. 3 ("Whoever by means of a motor vehicle flees or attempts to flee a police officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony[.]").

In addition, this Court finds that the officers did not use unreasonable force when they approached the maroon minivan. Officer Boerger did not remove his gun from his holster and point it at the driver until after Defendant had tried to grab the driver's shifter and after Defendant yelled "Go, go, go!" The fact that the officers stealthily approached and then tried to catch the occupants of the minivan by surprise does not equate to unreasonable force. At the time of the stop, the officers had a reasonable suspicion that the occupants of the minivan had been or were engaged in drug trafficking, which very often is accompanied by dangerous weapons. Therefore, the officers were justified in approaching the minivan in the manner that they did. *See United States v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999) (finding the officers did not use unreasonable force when they approached the truck at issue with their weapons drawn during a *Terry* stop).

Accordingly, this Court finds no Fourth Amendment violation in the traffic stop of the maroon minivan in which Defendant was a passenger or in Defendant's arrest, and recommends that Defendant's motion to suppress be denied.

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20), be **DENIED**.

Date: March 29, 2010

*s/Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 12, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **14 days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.